# UNITED STATES DISTRICT COURT
for the
Eastern District of Tennessee

| | |
|---|---|
| United States of America<br>v.<br>JOSE CRUZ LANDEROZ-TOVAR, MARIONO GONZALES, LUIS ALBERTO CRUZ, ADOLFO DOMIGUEZ, LUIS FERNANDO PENA-FIERRO, and MARIA MAGANA<br><br>*Defendant(s)* | Case No. 3:20-MJ-1036<br>~~3:20-CR-~~ |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __Dec 12, 2019 to March 9, 2020__ in the county of __Knox__ in the __Eastern__ District of __Tennessee__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Section 846 | Conspiracy to possess with the intent to distribute methamphetamine. |

This criminal complaint is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

SA Ted Francisco, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __03/10/2020__

*Judge's signature*

City and state: __Knoxville TN__

Debra C. Poplin
*Printed name and title*

# AFFIDAVIT

3:20-MJ-1036

1. I, Ted Francisco, Task Force Officer with the Homeland Security Investigations ("HSI"), being duly sworn, depose and state that:

2. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

3. I have been a Special Agent with Homeland Security and its predecessor since the 2000. Previously I worked for 13 years in local law enforcement. I am currently assigned to the HSI Office of the Resident Agent in Charge in Knoxville, Tennessee (HSI Knoxville). I have a vast amount of experience in federal narcotics investigations.

4. I have participated in numerous narcotics investigations. These investigations have resulted in the arrests of numerous targets and the seizure of various narcotics and assets. During the course of these investigations, I have debriefed defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations, conducted physical surveillance, supported wiretaps, executed search warrants, served subpoenas, analyzed and evaluated evidence and information obtained from court authorized pen registers and trap and trace intercepts, telephone tolls, financial documents, reviewed and transcribed recorded calls, and provided testimony. As a result of my experience and training, I am familiar with the manner in which various types of illegal drugs are cultivated, manufactured, transported, smuggled, distributed, or diverted, as well as methods used to finance drug transactions and launder drug proceeds.

5. I am submitting this affidavit for the limited purpose of establish probable cause for the arrest of Jose Cruz Landeroz-Tovar ("LANDEROZ"), Mariono Gonzalez ("GONZALEZ", Luis Alberto Cruz ("CRUZ"), Adolfo Dominguez ("Dominguez"), Luis Fernando Pena-Fierro ("PENA"), and Maria Magana ("MARIA"), for conspiracy to possess with the intent to distribute methamphetamine, in violation of Title 21, United States Code, Section 846.

6. The facts in this affidavit are based upon my personal knowledge, as well as knowledge, information, and documentation that I obtained from other law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include every fact known to me or to other law enforcement officers regarding this matter.

## **PROBABLE CAUSE**

*Background and Eastern District of Tennessee Nexus*

7. On or about December 12, 2019, a vehicle wrecked in the Eastern District of Tennessee. A witness saw the driver and the passenger flee the wrecked vehicle, and saw the passenger carrying a pelican case. Law enforcement arrived on the scene, and nearby found a pelican case with approximately 500 grams of crystal substance inside. Based on my training and experience, I believe that the substance recovered was methamphetamine[1].

8. Both the driver and passenger were located nearby and spoke with law enforcement and admitted that they were transporting methamphetamine. Both admitted that they had recently traveled to the Northern District of Georgia and bought the methamphetamine through a Hispanic woman named "Maria." Law enforcement obtained consent to search the phone of the driver and

---

[1] When referenced in this affidavit, seized drugs have not yet been tested, but appeared, based on my training and experience, as well as the training and experience of other officers, to be the particular drug seized and identified in the affidavit. Based on an increased threat to law enforcement officers on the scene of drug seizures from accidental overdoses or exposure to the seized drugs, I know that many law enforcement officer and agencies are not field-testing narcotics on the scene, but rather sending drugs to a lab for testing.

2

thus began a law enforcement investigation. Law enforcement later learned through text message search warrants, wiretaps, and other investigation that MARIA was the same "Maria" referenced by the driver and the passenger of the wrecked vehicle. In sum, I know that MARIA was the source of supply of the methamphetamine seized in the Eastern District of Tennessee.

*The defendants conspired to possess with the intent to distribute methamphetamine*

9. Law enforcement, through the use of text message search warrants, wiretaps on phones used by MARIA, geolocation information on phones used by MARIA, and other investigation, learned that MARIA was a drug trafficker that was coordinating operations for a drug trafficking organization ("DTO") in the Northern District of Georgia.

10. For example, law enforcement surveillance revealed that MARIA was staying in a hotel room in the Northern District of Georgia on or about December 23, 2019. Law enforcement observed a male drive up and park near MARIA's hotel room door, get out of his vehicle, and go inside. The male then emerged from that room with a black duffel back and then left the area in his vehicle. Another male, later learned to be Cody Seals ("SEALS"), then arrived in the hotel parking lot. SEALS was driving a vehicle with Tennessee plates. SEALS went inside the hotel room where MARIA was staying and then emerged carrying a "Doritos" bag. SEALS got back into his vehicle and headed north, back into Tennessee. In the Eastern District of Tennessee, Tennessee Highway Patrol ("THP") troopers noticed that SEALS was following another vehicle much too closely in violation of the law and attempted to pull over SEALS' vehicle. But SEALS began firing a handgun at the THP troopers as they pursued his fleeing vehicle. SEALS' vehicle was contacted by a pursuing trooper's vehicle and then stopped. SEALS emerged from his vehicle with an assault rifle and fired a very large number of shots at the troopers. One trooper was struck in the leg by a bullet. SEALS was struck by a bullet fired by a trooper and was taken into custody.

3

In SEALS' vehicle law enforcement discovered approximately 1.5 kilograms of methamphetamine in a Doritos bag, and approximately 500 grams of heroin.

11. After SEALS left the hotel parking lot where MARIA was staying, law enforcement officers observed MARIA and PENA depart the hotel room that SEALS had earlier entered. After committing a traffic violation, MARIA and PENA were traffic stopped by law enforcement. MARIA gave a false identification to officers and PENA gave what appeared to be a real Mexican identification card to law enforcement. Both were permitted to go on their way.

12. After this date, lawful wire intercepts, geo-location data, searched of seized phones, text message search warrants and other investigation revealed that MARIA continued to distribute kilogram quantities of methamphetamine. For example, from Mid-February, 2020, until the present, law enforcement intercepted numerous conversations over wiretaps in which MARIA coordinated the distribution of kilogram quantities of methamphetamine and other drugs.

13. Geo-location data from phones used by MARIA showed that MARIA visited 917 Pleasant Hill Road in Conyers, Georgia ("STASH HOUSE") somewhat frequently. Law enforcement surveillance on the STASH HOUSE observed that it was a one story residential home in a rural area that was approximately 30-40 minutes from where MARIA lived. It did not appear from surveillance that anyone lived there.

14. On or about March 9, 2020, law enforcement obtained a federal search warrant to search the STASH HOUSE property. Before the search warrant could be executed, surveillance on MARIA's residence spotted MARIA and PENA leaving their residence and traveling in a vehicle. Law enforcement attempted to stop the vehicle carrying MARIA and PENA but they fled, ultimately bailing out of their vehicle and running before they were apprehended.

15. That same day, LANDEROZ was carrying a phone used by another co-conspirator, which

4

law enforcement tracked pursuant to a geo-location warrant. The geo-location data showed the phone leaving the STASH HOUSE and approaching another house law enforcement intended to search that night. LANDEROZ was spotted arriving at the house in a vehicle, driving into the garage, and then departing a few minutes later. LANDEROZ's vehicle was stopped nearby and law enforcement found a firearm, a small amount (gram quantities) of methamphetamine, drug paraphernalia, and approximately $2,500 in cash inside LANDEROZ's vehicle. LANDEROZ admitted to law enforcement that he worked for MARIA.

16. At approximately 7:00pm on March 9, 2020, and into the early morning hours of March 10, 2020, law enforcement executed a search warrant on the STASH HOUSE. Inside two vehicles at the STASH HOUSE property, a bus and a tractor-trailer, law enforcement discovered more than 800 kilograms of methamphetamine hidden in compartments. Inside the house, law enforcement found equipment with possible methamphetamine residue that can be used to convert liquid methamphetamine into crystal methamphetamine. There were no beds in the STASH HOUSE. In the approximately 24 hours leading up to the seizure, law enforcement surveillance spotted multiple individuals at the STASH HOUSE working on or near the bus and tractor trailer and appearing to load or unload something. Based on prior law enforcement surveillance, the activity was highly unusual for the STASH HOUSE location. In total, law enforcement seized approximately 916 kilograms of methamphetamine on or about March 9, 2020, including over 800 kilograms at the STASH HOUSE and approximately 52 kilograms at another location used by the DTO.

17. Present at the STASH HOUSE when the methamphetamine was seized were GONZALES, CRUZ, and DOMINGUEZ. Law enforcement records indicated that the bus at the STASH HOUSE had recently crossed the border from Mexico. One individual at the STASH HOUSE told

5

Case 3:20-mj-01036-DCP   Document 1   Filed 03/10/20   Page 6 of 7   PageID #: 6

law enforcement that they had been working to unload methamphetamine from the bus the night before.

18.  Based on a wholesale kilogram price of approximately $4,000 a kilogram, the methamphetamine seized by law enforcement on or about March 9, 2020 had a wholesale price of approximately $3,664,000. At a street-level sale price of $400 an ounce, the methamphetamine had a street value of approximately $13,000,000.

19.  Based on the foregoing, I respectfully submit there is probable cause to support the arrest of the individuals named in the complaint.

_____
TED FRANCISCO, SA HSI

Sworn and subscribed before me on
March 10, 2020, in Knoxville, TN.

_____
DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE